IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brenlux sárl,

          Plaintiff,

  -vs-

Willard & Kelsey Solar Group, LLC, et al.

          Defendants.

Case No. 10 CV 1768

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

## INTRODUCTION

Pending before the Court are Plaintiff's Motion for Partial Judgment (Doc. No. 41), Plaintiff's Motion to Dismiss Defendants' Counterclaim and Strike Certain Defenses (Doc. No. 42), and Defendants' Motion to Dismiss Plaintiff's Fraud Claim (Doc. Nos. 39, 50–51). The Court heard oral argument on June 30, 2011. This Opinion reflects the rulings made during the June 30 hearing.

## BACKGROUND

**Factual Background**

Plaintiff Brenlux sárl, a limited liability association incorporated under the laws of Luxemburg, is the owner of 111 membership units in Defendant Willard & Kelsey Solar Group, LLC (W&K), an Ohio resident. W&K manufactures and sells solar panels and related products.

On August 20, 2008, Metra S.p.A, Europartners Ventures S.A., and Caterina SRL (European Parties) entered into a Membership Unit Purchase Agreement (MUPA) with W&K (Doc. No. 1-2). The European Parties paid $5,000,000 to W&K. On October 28, 2008, these parties transferred their membership units and ownership interests in W&K to Brenlux through a valid assignment agreement.

Brenlux contends that immediately after the European Parties invested the money, W&K's staff and members began receiving "sham" loans from the company. According to Brenlux, the individual Defendants received loans totaling $2,970,649 (from $408,000 to $592,000 each) between August 2008 and April 2010. Thereafter until the end of 2010, the individual Defendants (except for Mitchell), instead of loaning themselves money, gave themselves bi-weekly "guaranteed" payments totaling $1,266,667 ($255,556 each). These loans and guaranteed payments were not discussed at any W&K board meetings which Brenlux or the European Parties attended. The alleged improper payments total $4,237,316 of the $5,000,000 invested in W&K.

Brenlux further contends that before the European Parties entered into the MUPA, W&K represented it would form a new solar panel company (Newco) within eighteen months of closing the deal. This plan was memorialized in the MUPA. Because W&K failed to form Newco, Brenlux claims it properly exercised the Put Option contained in Section 6.2 of the MUPA, which required W&K to repurchase the units at $45,045.05 each, plus interest, within ninety days. W&K, however, failed to repurchase.

Although W&K admits it did not form Newco, it argues Brenlux's breach of MUPA Section 5.2 excused its performance under Section 6.2. Specifically, W&K contends Section 5.2 required Brenlux to negotiate in good faith with respect to the formation of Newco, as provided in the executed Letter of Intent (LOI). In support of its argument, W&K highlights two of Brenlux's negotiating points that violate the LOI: first, Brenlux requested an expansion of the territories to be included in the European market; and second, Brenlux requested a perpetual intellectual property and technology license instead of allowing W&K to retain its intellectual property rights.

**Procedural Background**

The Amended Complaint names W&K and seven individual Defendants (all former members or employees of W&K) and alleges five claims of relief (Doc. No. 29). There are claims against W&K for breach of contract (for failing to perform under the Put Option and for excluding Brenlux from the Board of Managers), and claims against the individual Defendants for breach of fiduciary duty, fraud, and fraudulent transfers under R.C. § 1336.04 (Doc. No. 29 at 7–13).

W&K filed a Motion to Dismiss Brenlux's fraud claim (Doc. No. 39), arguing Brenlux did not plead its claim with particularity as required by Federal Civil Rule 9(b). The individual Defendants (except for Mitchell) filed a Motion to Dismiss Brenlux's fraud claim as well (Doc. No. 50).

Additionally, Brenlux filed a Motion for Partial Judgment on the Pleadings as to its claim for breach of the Put Option (Doc. No. 41) and a Motion to Dismiss W&K's Counterclaim for breach of contract and to strike three of W&K's defenses (Doc. No. 42).

## ANALYSIS

**Standards of Review**

*Motion for Judgment on the Pleadings*. This Court reviews a motion under Rule 12(c) using the same *de novo* standard it would use in reviewing a motion under Federal Civil Rule 12(b)(6). *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). That is, all the non-movant's well-pleaded material allegations are taken as true, and "[t]he motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *See United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993).

*Motion to Dismiss*. This Court's function when deciding a motion to dismiss under Federal Civil Rule 12(b)(6) is to test the legal sufficiency of the complaint. In scrutinizing a complaint, the

court must accept the complaint's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although a complaint need not contain "detailed factual allegations," Rule 12(b)(6) requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).

*Motion to Strike*. Under Federal Civil Rule 12(f), this Court may "strike from a pleading an insufficient defense." A defense will be held insufficient "only if it appears that the defendant cannot succeed under any set of facts which it could prove." *See Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 905 (N.D. Ohio 2003) (granting Rule 12(f) motion to strike affirmative defenses).

**Brenlux's Motion for Partial Judgment on the Pleadings (Doc. No. 41)**

Brenlux filed a Motion for Partial Judgment on the Pleadings on its claim W&K breached Section 6.2 of the MUPA when it failed to repurchase shares pursuant to the Put Option. There is no doubt Brenlux's Complaint establishes the four main elements of a breach of contract claim: (1) the existence of a contract; (2) performance by the plaintiff; (2) breach by the defendant; and (4) damage or loss to the plaintiff. *Thomas v. Publrs. Clearing House*, 29 F. App'x 319, 322 (6th Cir. 2002). Furthermore, W&K admits it did not repurchase the membership units, despite receiving notice of the Put Option. Nevertheless, W&K argues Brenlux materially breached Section 5.2 of the MUPA by failing to negotiate in good faith, thus excusing W&K's performance.

4

Section 5.2 of the MUPA states:

5.2. Covenants of Investor. The Investor will, or will cause its affiliate to, negotiate in good faith with the Company with regard to the formation of Newco and the establishment of arrangements for the sale of products by the Company to Newco for completion and distribution in certain European markets, as and to the extent provided in the executed Letter of Intent.

According to W&K, Brenlux insisted on unfair changes to the terms in the license agreement, proposed at the "eleventh hour" of negotiations in May 2009. W&K attached Brenlux's proposal to its Amended Answer and Counterclaim (Doc. No. 40) to illustrate the two ways in which the new terms contradicted those contained in the LOI.

First, Brenlux proposed a license agreement that expanded the sales territory beyond that agreed to in the LOI. The LOI originally provided Newco shall have the right to sell its products in all nations of the European Economic Community and Switzerland, Algeria, Morroco, Tunisia, Libya, Egypt, Israel, Quatar, United Arab Emirates and Saudi Arabia (Doc. No. 29-1 at 63). However, Brenlux's proposal adds to that list: Russia, Turkey, United Kingdom, Sweden, Lebanon, Syria, Jordania, Palestine, and South Africa (Doc. No. 40-1 at 3).

Second, Brenlux insisted on acquiring control of W&K's intellectual property and technology rights. Section 3.2 of the LOI provides "Willard's contribution to the capital of the Newco . . . shall be in the form of a perpetual non-transferable license to Newco of Willard's intellectual property that is necessary for carrying out the activities of the Newco" (Doc. 29-1 at 62). This section also provides (Doc. No. 29-1 at 62–63):

This license . . . shall be perpetual and without any limit to the production capacity of the Newco except that the license shall terminate upon the first to occur of the following: a change in control of Newco, a termination of Willard's interest in Newco other than by the choice of Willard, a sale or attempted sale by Newco of any substantial portion of its business or assets other than in the ordinary course of business, commencement of insolvency proceedings of Newco or the liquidation of Newco.

5

W&K believes this language makes it clear all intellectual property and technology rights were to remain vested in W&K. By contrast, Brenlux's proposed agreement states: "During the Term hereof, Licensor hereby grants to Licensee, upon and subject to all the terms and conditions of this Agreement, an exclusive license . . ." (Doc. No. 40-1 at 2). W&K contends this alteration gives Brenlux a "perpetual license without qualification" (Doc. No. 47 at 3).

While the proposed license agreement appears to go beyond the terms of the non-binding LOI, it is unclear if such proposals constitute bad faith negotiation. The language of MUPA Section 6.2 makes it clear Brenlux could exercise the Put Option if after eighteen months W&K had not formed Newco. The parties closed the original agreement August 20, 2008, so the earliest Brenlux could have exercised the Put Option was February 20, 2010. However, Brenlux proposed the license agreement in May 2009, nine months prior to that deadline, and it is unclear what negotiations, if any, occurred during that nine-month gap.

While Brenlux urges this Court to grant judgment requiring W&K's performance with respect to Section 6.2, this Court cannot ignore the language of Section 5.2. Under the basic rule of contract interpretation, the entire document must be read together. While it is true that, under certain circumstances, one party's material breach can excuse the other's contractual duty to perform, *Nious v. Griffin Constr., Inc.*, 2004 Ohio App. Lexis 374, *8 (Ohio Ct. App. 2004), a ruling on whether such circumstances exist in this case cannot be made at this stage. To determine whether either party breached, there must be an examination of Sections 5.2 and 6.2 in the context of the negotiations after the LOI. Because several issues of material fact exist, the Motion for Partial Judgment on the Pleadings is denied.

6

**Brenlux's Motion to Dismiss W&K's Counterclaim (Doc. No. 42)**

Brenlux also filed a Motion to Dismiss W&K's Counterclaim for breach of contract as to Section 5.2 of the MUPA. According to Brenlux, a breach of the duty of good faith cannot exist independent of a breach of the underlying contract, and the parties never agreed to form Newco on the terms outlined in the LOI (Doc. No. 42 at 4). Brenlux contends it was therefore never contractually obligated to form Newco. For the same reasons stated above, question of material fact preclude a dismissal of this breach of contract claim. W&K's claim is facially plausible and the Motion to Dismiss is denied.

**Brenlux's Motion to Strike W&K's Defenses (Doc. No. 42 at 7–8)**

Brenlux also moved to strike three of W&K's defenses. Specifically, Brenlux wishes to strike W&K's defenses that: (1) Brenlux did not perform or satisfy the condition precedent to its recovery, (2) Brenlux prevented W&K's performance, and (3) Brenlux's breach excused W&K's performance (Doc. No. 42 at 7). According to Brenlux, these defenses are insufficient as a matter of law. However, each of these defenses could be valid if the fact finder determines Brenlux breached Section 5.2 of the contract as W&K alleges in its Counterclaim. Because there remains a genuine issue of material fact as to whether Brenlux negotiated in good faith, the Motion to Strike is denied.

**Defendants' Motions to Dismiss Brenlux's Fraud Claim (Doc. Nos. 39, 50–51)**

In its Amended Complaint, Brenlux asserts a common-law fraud claim alleging the following: "Defendants . . . represented to the European Investors" that W&K desired to form Newco to manufacture and distribute solar panels in the European market within eighteen months; "Defendants represented to Brenlux" the investment funds would be used strictly for W&K's operating expenses and to launch its production lines; and "Defendants concealed and/or misrepresented facts material" to Brenlux's investment agreement with W&K. Defendants argue Brenlux's reliance on the generic

7

term "Defendants" without identifying which individual Defendant made the alleged statements is insufficient as a matter of law because it fails to plead fraud with the required specificity.

Under Federal Civil Rule 9(b), to properly plead a fraud claim, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995). Furthermore, a plaintiff must allege the time, place, and contents of the misrepresentations upon which he relied. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Here, Brenlux's pleading falls short of Rule 9's requirements. This Court need not address whether the alleged misrepresentations can form the basis of a fraud claim, as Brenlux fails to sufficiently identify the circumstances under which the statements were made. In short, the Amended Complaint does not identify by name any individual, nor does it pinpoint the time and location of any specific misrepresentation. At best, Brenlux alleges the general content of certain statements, such as the intended purposes for the money.

While insufficiently pled in current form, Brenlux's arguments during the June 30 hearing indicated that additional detail regarding fraudulent acts may be uncovered as discovery proceeds. W&K and the individual Defendants have been sufficiently placed on notice of Brenlux's allegations of fraud such that if and when Brenlux uncovers specific facts, such as statements attributable to specific individuals at a specific time and place, Brenlux's fraud claim may be reintroduced upon leave and with a showing of good cause.

Accordingly, W&K's Motion to Dismiss Brenlux's common-law fraud claim is granted without prejudice.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Partial Judgment (Doc. No. 41) is denied. Plaintiff's Motion to Dismiss Defendant's Counterclaim and Strike Certain Defenses (Doc. No.42) is denied. Defendants' Motions to Dismiss Plaintiff's Fraud Claim (Doc. Nos. 39, 50–51) are granted.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

July 27, 2011